The TRAVELERS FIRE INS. CO. et al.,
Appellants,

v.

Carl STEINMANN, Appellee.

No. 14907.

Court of Civil Appeals of Texas.

Dallas.

March 4, 1955.

Rehearing Denied March 25, 1955.

Thompson, Knight, Wright & Simmons, Pinkney Grissom and David M. Kendall, Jr., Dallas, for appellants.

Strasburger, Price, Kelton, Miller & Martin, and Royal H. Brin, Jr., Dallas, for appellee.

DIXON, Chief Justice.

This suit was filed by Carl Steinmann, appellee, against The Travelers Fire Insurance Company, Anchor Casualty Company, and Frank C. Turney for $1,500 which appellee alleged was his proper share of the proceeds of two fire insurance policies in the total face amount of $3,000 on a one story, metal roof, iron clad building at 2448 Five Mile Drive (Kiest Drive), Dallas, Texas.

All three defendants filed answers, but Turney failed to appear and make defense at the trial. Judgment by default was therefore rendered against Turney and he has not appealed. As between the other parties the controversy was submitted to the trial court on an agreed statement of facts, and judgment was rendered against each of the two insurance companies for $750—a total of $1,500. The two companies have appealed.

Both policies were Texas Standard Form policies covering a period of one year beginning April 16, 1952, payable to Frank C. Turney as his "interest may appear." The policies further provided: "Subject to Article 4929, Revised Civil Statutes of Texas, 1925 [V.A.T.S., Insurance Code, art. 6.13] liability hereunder shall not exceed the actual cash value of the property at the time of loss, * * *; *nor shall it exceed the interest of the insured.*" (Emphasis supplied.) By their express terms each policy also provided that it was not

assignable except by written consent of the Company. Neither of the policies was issued to appellee Carl Steinmann, nor is he even named in either policy.

On January 20, 1953 the property insured burned with a total loss in excess of $3,000. Agents of the two insurance companies, employed to investigate the fire and adjust the loss, learned in the course of their investigation that appellee Steinmann claimed one-half of any amount of insurance collected by Frank C. Turney. To substantiate his claim Steinmann showed the agents a written contract between himself and Turney dated August 7, 1952—nearly four months after the effective date of the policies. The contract contains these provisions: "This memorandum * * * in regard to the iron clad building situated at 2448 Kiest Drive, on land owned by Carl Steinmann. It is agreed and understood that the building belongs to Carl Steinmann and Frank C. Turney * * *. The main purpose of this memo is to establish that the building belongs one half to each * * *. Said building is insured for $3,000 and in event of fire loss any insurance collected shall belong one-half to each of the parties hereto."

Thereafter the insurance companies paid Frank C. Turney the sum of $1,500 based on his one-half interest in the burned building. They declined to pay appellee Steinmann the claim asserted by him under the policies.

Appellants present four points on appeal alleging error in rendering judgment for appellee for $1,500 because (1) the policies were payable to Frank C. Turney, as his interest appeared, and appellee was not named as an insured; (2) appellee did not have an assignment of the policies, but only an assignment of an interest in the proceeds, therefore appellants properly paid the proceeds to the named insured; (3) the evidence showed that prior to suit appellants had settled all liability under the policies issued to Frank C. Turney with Frank C. Turney; and (4) in the alternative, the judgment was excessive, in view of the fact that, at most, appellee was entitled to one-half of the insurance payable on Turney's one-half interest in the building—a judgment of $750.

We agree with appellants that we are presented with two main questions, the answers to which are decisive of this appeal. The first is whether appellee, though nowhere mentioned in the policies as an insured, or a beneficiary, or otherwise, was entitled to recover in a direct suit brought on the policies against appellants. The second question, which arises if the first question is answered "No," is whether appellee is entitled to recover against the insurance companies upon a further showing that before payment of the proceeds to Turney, and before appellee filed suit, appellants through their agents, knew that appellee claimed an interest in the insurance collected.

As we have already pointed out, the policies provide that they are not assignable except by written consent of the companies. Appellee does not claim that he is an assignee of the policies, nor would the language of his contract with Turney bear any such construction. The contract merely takes notice of the fact that the "building is insured for $3,000.00" and that "any insurance collected shall belong one-half to each of the parties." The agreement is doubtless valid and binding as a personal contract between Steinmann and Turney, and Steinmann was entitled to judgment against Turney when Turney failed and refused to honor his agreement. But we are of the opinion that under the circumstances, Steinmann is not entitled to judgment against the two insurance companies.

We know of no Texas case in point, though in at least one case the court has impliedly recognized the distinction between an assignment of the policy and an assignment merely of part of the proceeds. In Continental Insurance Co. v. Scott, Tex. Civ.App., 254 S.W. 499 it was held that since Scott, the named insured, had assigned only an interest in part of the proceeds of the policy, he could maintain suit on the policy in his own name.

We believe that an analogous situation exists in cases where clients make assign-

ments to attorneys in payment of fees. When a plaintiff assigns an interest in his cause of action to his attorney and the defendant has notice of the assignment, the defendant must include the attorney in any settlement; he may not settle with the plaintiff alone without making himself liable to the attorney also. Wilson v. House, Tex.Civ.App., 131 S.W.2d 995. But when the assignment is merely of so much as may be recovered, or a portion thereof, rather than an interest in the cause of action, the defendant may settle with the plaintiff alone, and the attorney has only a cause of action against his client, not against the defendant. Wheeler v. Fronhoff, Tex.Civ.App., 270 S.W. 887, Dism.; Carroll v. Hunt, 140 Tex. 424, 168 S.W.2d 238 (Comm.App., opinion adopted by S.C.).

■ The general rule is that a fire insurance policy is personal contract between the insurer and the insured, and a stranger to the policy may not ordinarily maintain a suit on it. Montgomery v. Hart, 225 Ala. 471, 144 So. 101; Nelson v. Nelson Neal Lumber Co., 171 Wash. 55, 17 P.2d 626, 92 A.L.R. 554; Continental Ins. Co. v. Maxwell, 9 Kan.App. 268, 60 P. 539; Spires v. Hanover Fire Ins. Co., 364 Pa. 52, 70 A.2d 828; 46 C.J.S., Insurance, § 1140, page 19. In 5 Appleman, Insurance Law and Practice 497, Sec. 3361 it is said, "Where by the terms of the policies, the insurer is not to be liable beyond the interest of the insured in the property, a stranger to the contract cannot collect thereon simply because he was the owner of an undivided interest in the property." Under the circumstances of this case we think the general rule is applicable.

Appellee in his brief says that his cause of action may be stated in two propositions: "(A) Where there is a contractual duty upon one person to maintain insurance for the protection or benefit of another having an interest in the property and such insurance is taken out or maintained, such person has an equitable lien on the policy and the proceeds due even though not named as an insured; (B) Such an equitable claim or interest is good not only against the named insured but also against the insurance company where it has knowledge or notice of the existence or claimed existence of such equitable lien or interest before making payment."

In support of the above two propositions appellee cites numerous cases involving the mortgagor-mortgagee, lessor-lessee, or landlord-tenant situations in which the mortgagor, or lessee, or tenant, as the case may be, as part of the consideration of the contract, promises and obligates himself to maintain insurance for the benefit of the mortgagee, lessor or tenant. In the performance of such an agreement it is the usual practice to include in or attach to the insurance policy a loss payable clause naming the mortgagee, lessor, or landlord, as his interest may appear. Should the mortgagor take out the insurance in his own name only, failing to include the loss payable clause to his mortgagee, an equitable lien will be recognized and the insurance company under some circumstances will be held liable if it pays out all of the proceeds to the named insured with knowledge of the claim of the mortgagee, lessor or landlord.

■ In our opinion such situations are not analogous to the situation in the case at bar, and the holdings in such cases are therefore not controlling here. In the instant case the policies are payable only to Frank C. Turney as his interest may appear. Turney's contract with appellee was not executed until nearly four months after the insurance had been in effect. And in the contract Turney does not promise or obligate himself to maintain insurance for appellee's benefit. The parties merely recognize that the building is already insured and in the event of fire loss "any insurance collected shall belong one-half to each of the parties." Under such terms if no insurance at all were collected, appellee would hardly be in position to base an action on his contract with Turney, since the contract limits him to one-half of "the insurance collected." The insurance companies were not informed of this contract when it was executed, nor did they learn of it until after the fire, when their agents

found out about it in the course of their investigation. In our opinion it was a collateral contract, personal as between Turney and appellee, not involving the insurance companies, which the insurance companies were under no duty to enforce for appellee. So far as the record shows, though the companies at the time they settled with Turney knew of the contract, there was no reason for them to anticipate or to suspect that Turney would dishonor his personal, side agreement with appellee.

We sustain appellants' first, second and third points.

Appellants' fourth point was presented only in the alternative, in the event we overruled appellants' other points. In the light of our holding on the other points, we see no need to consider said fourth point.

The judgment of the trial court is reversed, and judgment is here rendered that appellee take nothing against appellants.